

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. J.E. McDonald, Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:

Opinion No. O-1464
Re: Conflict in provisions in Chapter 8, "Market-
ing Associations," Title 93, Vernon's Annotated
Civil Statutes.

We are in receipt of your letter in which you re-
quest our opinion upon the question of whether or not
there is a conflict between certain provisions of Article
5739, as amended, Vernon's Civil Statutes and Article 5750,
Revised Civil Statutes, 1925.

The situation upon which your inquiry is based is
as follows:

"Article 5739 of the Revised Civil Statutes
originally provided 'five or more persons en-
gaged in the production of agricultural products
may form a non-profiting association with or
without capital stock, under the provision of
this chapter'. Article 5750 of the statutes
provide, inter alia, '... no stockholder of a
cooperative association shall own more than
1/20th of the issued common stock of the asso-
ciation; and a association, in its by-laws, may
limit the amount of capital stock which one mem-
ber may own to any amount less than 1/20th of
the issued common stock. No member or stock-
holder shall be entitled to more than one vote
...' In 1930 the 41st Legislature amended and
re-enacted Article 5739 as follows: five or
more persons engaged in the production of agri-
cultural products or three or more associations
may form a non-profit cooperative association
with or without capital stock, under the pro-
vision of this chapter'.

Hon. J.E. McDonald, page 2

"By the original enactment, and by the sub-
sequent amendment and re-enactment of Article
5739, the Legislature obviously intended that
any five persons engaged in the production of
agricultural products could organize a corpor-
ation under the provisions of Chapter 8. Fur-
thermore, on two different occasions, the Leg-
islature expressed its intention to permit the
creation of such corporation by five persons
or more who shall be engaged in the production
of agricultural products, with capital stock.
But then, under the provisions of Article 5750
quoted above, it is impossible to organize an
association with capital stock contemplated by
Article 5739 unless twenty persons or more be-
come stockholders of the association."

Texas Jurisprudence, Volume 28, page 667, has the
following general observations to make concerning the Co-
operative Marketing Association Act of 1921, as amended in
1930 and 1934 (Articles 5737 through 5764, Vernon's Anno-
tated Civil Statutes):

"The Act of 1921 is the 'standard Act' which
has not only been adopted in similar form by
the Legislatures of nearly all of the states,
but has also been recognized by Congress. The
declared policy of the Act is:

"'To promote, foster and encourage the in-
telligent and orderly marketing of agricul-
tural products through co-operation and to
eliminate speculation and waste; and to
make the distribution of agricultural prod-
ucts as direct as can be efficiently done
between producer and consumer; and to sta-
bilize the marketing problems of agricul-
tural products.' (Article 5737, supra)

"The statute is comprehensive. It declares
that the term 'agricultural products' includes
horticultural, viticultural, forestry, dairy,
livestock, poultry, bee and any farm and ranch
products (Art. 5738, supra). It allows the fix-
ing in advance of liquidated damages for breach
of a marketing contract, and contains no re-
strictions as to the locality of the operations

Hon. J.E. McDonald, page 3

of associations under it." (Parenthetical insertions ours).

In Article 5738, supra, a "member" is defined as follows:

"(b) The term 'member' shall include actual members of associations without capital stock and holders of common stock in associations organized with capital stock; * * * *

In the same article a "person" is defined as:

"(d) The term 'person' shall include individual, firms, partnerships, corporations and associations. * * * "

Article 5739, supra, reads as follows:

"Five or more persons engaged in the production of agricultural products or three or more associations may form a non-profit co-operative association with or without capital stock, under the provisions of this chapter."

Article 5743, supra, provides:

"(a) Under the terms and conditions prescribed in its by-laws, an association may admit as members, or issue common stock, only to persons engaged in the production of the agricultural products to be handled by or through the association, including the lessees and tenants of land used for the production of such products and any lessors and landlords who receive as rent part of the crop raised on the leased premises. (b) If a member of a non-stock association be other than a natural person, such member may be presented by any individual, associate officer or member thereof, duly authorized in writing. (c) Any association as defined in Art. 5738 (d) may become a member or stockholder of any other association or associations organized hereunder."

Article 5744, supra, reads as follows:

"Each Association formed under this Act must

Hon. J.S. McDonald, page 4

prepare and file Articles of Incorporation, setting forth: (a) The name of the association. (b) The purposes for which it is formed. (c) The place where its principal business will be transacted. (d) The term for which it is to exist, not exceeding fifty (50) years. (e) The number of directors thereof, which must not be less than five (5) and may be any number in excess thereof, and the term of office of such directors. (f) If organized without capital stock, whether the property rights and interest of each member shall be equal or unequal; and if unequal, the Articles shall set forth the general rule or rules applicable to all members by which the property rights and interests, respectively, or each member may and shall be determined and fixed; and the association shall have the power to admit new members who shall be entitled to share in the property of the association with the old members, in accordance with such general rule or rules. This provision of the Articles of Incorporation shall not be altered, amended or repealed except by the written consent or the vote of three-fourths of the members. (g) If organized with capital stock, the amount of such capital stock and the number of shares into which it is divided and the par value thereof. The capital stock may be divided into preferred and common stock. If so divided, the Articles of Incorporation must contain a statement of the number of shares of stock to which preference is granted and the number of shares of stock to which no preference is granted and the nature and extent of the preferences and privileges granted to each. The Articles must be subscribed by the incorporators and acknowledged by one of them before an office authorized by the law of this State to take and certify acknowledgments of deeds and conveyances; and shall be filed in accordance with the provisions of the general corporation law of this State; and when so filed the said Articles of Incorporation or certified copies thereof, shall be received in all courts of this State, and other places, as prima facie evidence of the facts contained therein, and of the due incorporation of such association. A certified copy of the Articles

Hon. J.E. McDonald, page 5

of Incorporation shall also be filed with the
Commissioner of Markets,and Warehouses; provid-
ed, however, no part of such capital stock shall
be required to be subscribed and/or paid in as
a prerequisite to the filing of such Articles
of Incorporation; provided further that such
associations may, from time to time, sell and
issue to their members or stockholders, shares
of capital stock in such manner and upon such
terms and conditions as shall be provided in
their By-Laws; and provided further, however,
that no such shares of capital stock shall be
sold and issued to any one not a member or
stockholder of such association without first
complying with the Blue Sky Laws of Texas."
(Underscoring ours)

Article 5746, supra, deals with "By-Laws". We
shall not quote the article in full, but, inter alia, it
stipulates that the by-laws may provide for the following
matter:

"(1) The number and qualification of members
or stockholders of the association and the con-
ditions precedent to members of ownership of
common stock; the method, time and manner of
permitting members to withdraw or the holders
of common stock to transfer their stock; the
manner of assignment and transfer of the inter-
est of members, and of the shares of common
stock; the conditions upon which, and time when
membership of any member shall cease * * * "

Article 5750, supra, a key statute in respect to
this opinion, reads as follows:

"When a member of an association established
without capital stock, has paid his membership
fee in full, he shall receive a certificate of
membership. No association shall issue stock
to a member until it has been fully paid for.
The promissory notes of the members may be ac-
cepted by the association as full or partial
payment. The association shall hold the stock
as security for the payment of the note, but
such retention as security shall not affect the
members' right to vote. Except for debts law-

Hon. J.E. McDonald, page 6

fully contracted between him and the association, no member shall be liable for the debts of the association to an amount exceeding the sum remaining unpaid on his membership fee or his subscription to the capital stock, including any unpaid balance on any promissory notes given in payment thereof. No stock-holder of a co-operative association shall own more than one-twentieth of the issued common stock of the association; and an association, in its by-laws, may limit the amount of common stock which one member may own to any amount less than one-twentieth of the issued common stock. No member or stock-holder shall be entitled to more than one vote. Any association organized with stock, under this law may issue preferred stock, with or without the right to vote. Such stock may be redeemable or retirable by the association on such terms and conditions as may be provided for by the Articles of Incorporation and printed on the face of the certificate. The by-laws shall prohibit the transfer of the common stock of the association to persons not engaged in the production of the agricultural products handled by the association, and such restrictions must be printed upon every certificate of stock subject thereto. The association may at any time except when the debts of the association exceed fifty per cent of the assets thereof, buy in or purchase its common stock at book value thereof as conclusively determined by the board of directors and pay for it in cash within one year thereafter." (Underscoring ours).

After careful consideration of the above quoted provisions of the Cooperative Marketing Act of 1921, as amended, we fail to perceive any irreconcilable conflict between Articles 5739 and 5750, supra.

An association is formed under the Cooperative Marketing Act by "five or more persons engaged in the production of agricultural products or three or more associations" in accordance with the provisions of Article 5739.

These are the incorporators who subscribe to the Articles of Incorporation and file them as provided in Article 5744, supra. The articles, if the association is

Hon. J. E. McDonald, page 7

organized with capital stock, set, forth the amount of such capital stock and the number of shares into which it is divided and the par value thereof.

Now, as shown in Article 5738, supra, the term "person" as used in Article 5739, supra, shall include individuals, firms, partnerships, corporations and associations.

A "member" of an association organized with capital stock is a holder of common stock in that organization. Article 5738, supra.

Article 5750, supra, plainly provides that:

"No stock-holder of a cooperative association shall own more than one-twentieth of the issued common stock of the association; and an association in its by-laws, may limit the amount of common stock which one member may own to any amount less than one-twentieth of the issued common stock."

This language is clear and unambiguous, not subject to construction.

We do not see why the "incorporators" under Article 5739, supra, should be confused with the membership of the association or stockholders if it is an association with capital stock.

The "incorporators" represent the prospective members of the association being chartered.

28 TEX. JUR. 671:

"Generally the organization is effected by a 'group of persons' or organization committee, who may make minor changes in the organic features of the incorporation, when authorized by the organization agreement, and a majority of whom may determine the propriety of completing the organization, at least where there is no dissent or objection on the part of absentees."

LENNOX v. TEXAS FARM BUREAU COTTON ASS'N. (Civ. App.) 16 S.W. (2nd) 413.

Hon. J.E. McDonald, page 8

The Cooperative Marketing Act undoubtedly contemplates a membership for a cooperative marketing association established with common stock large enough to assimilate the issued stock in amounts of one-twentieth or less. In other words, there was contemplated under the provision of Article 5760, supra, above quoted, a large enough number of stockholding members to meet the requirement that "no stockholder of a co-operative association shall own more than one-twentieth of the issued common stock of the association; and an association, in its by-laws, may limit the amount of common stock which one member may own to any amount less than one-twentieth of the issued common stock."

See 28 TEX. JUR. 674:

"In forming a marketing association, it appears that agreements, similar in terms, are circulated by the promoters and signed by the individual growers who are to become members. These agreements not only embrace an application for membership and the proposed marketing agreement, but also specify the terms and conditions under which the association may be organized. Taken together they constitute a single contract between the members of the prospective association and an organic contract between them and the association, when it is organized. Doubtless it is improper to proceed with the incorporation of an association when the requisite number of signatures have not been obtained, or if other conditions authorizing the committee to act have not occurred * * * *"

TEXAS FARM BUREAU COTTON ASS'N. v. LENNOX (Civ. App.) 257 S.W. 935, subsequent appeals (Civ. App.) 283 S.W. 619, 296 S.W. 328, 16 S.W. (2d) 413, 37 S.W. (2d) 331, (Comm. App.) 55 S.W. (2d) 543.

An association organized under the Cooperative Marketing Act is a legalized agricultural cooperative, consisting of growers of agricultural products.

19 AMERICAN BAR ASSOCIATION JOURNAL 212:
TEXAS FARM BUREAU COTTON ASS'N. v. KILE, (Civ. App.) 281 S.W. 629 (Cotton Growers).

Hon. J.E. McDonald, page 9

As such, the Legislature no doubt considered it sound public policy that no individual stockholder of such an association with stock should own more than one-twentieth of the issued common stock, and has so provided in Article 5750, supra.

Marketing acts are given a liberal construction in order to accomplish the purposes for which they were enacted.

    LENNOX v. TEXAS COTTON COOPERATIVE ASSOCIATION, (Comm. App.) 55 S.W. (2d) 543, reversing 37 S.W. (2d) 331, former appeals (Civ. App.) 16 S.W. (2d) 413, 296 S.W. 328, 283 S.W. 619, 257 S.W. 935.

It is our opinion, and you are so advised that there is no conflict between the provision of Article 5739, Vernon's Annotated Civil Statutes, that five or more persons engaged in the production of agricultural products may form a non-profit cooperative association with capital stock and the requirement of Article 5750, R.C.S., 1925, that -

    "No stockholder of a cooperative association shall own more than one-twentieth of the issued common stock of the association,"

when the association is established with capital stock.

It is our further opinion that the requirement of Article 5750, R.C.S., 1925, that no stockholder of a cooperative association shall own more than one-twentieth of the issued common stock of the association is mandatory and that irrespective of the number of incorporators under Article 5739, Vernon's Annotated Civil Statutes, and the number of members as defined in Articles 5738 and 5743, Vernon's Annotated Civil Statutes, no individual stockholders may own a greater percentage of the total issued common stock than one-twentieth.

Trusting that we have fully answered your inquiry, we are

        Yours very truly

        ATTORNEY GENERAL OF TEXAS

    By

        Dick Stout
        Assistant

DS:ob

APPROVED DEC 16, 1939

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN